IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | Case Number: 3:13-cr-0065-M-1 |
| | § | |
| ATUL NANDA, | § | |
| | § | |
| Defendant. | § | |

# ORDER

Before the Court is Defendant Atul Nanda's Motion for Compassionate Release (ECF No. 447). For the reasons stated below, the Motion is DENIED.

## I.   Background

On June 3, 2016, Nanda was sentenced to 87 months' imprisonment and a three-year term of supervised release after he was convicted of conspiracy to commit visa fraud, in violation of 18 U.S.C. §§371 and 1546; conspiracy to harbor illegal aliens, in violation of 18 U.S.C. §§ 1324(a)(1)(A) & (a)(1)(B); and wire fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1343 & 2). (ECF No. 322). Nanda is incarcerated at Reeves I & II CI, which is owned and operated by GEO Group. He has served over 60% of his prison term, and his anticipated release date is September 13, 2022. His restitution judgment of $119,038.30 has been paid in full.

Nanda properly exhausted his administrative remedies before filing his Motion with this Court. Nanda made two requests for compassionate release to Reeves I & II CI's facility administrator and both were denied. The Government does not dispute that Nanda has exhausted his administrative remedies. (ECF No. 456 at 2).

Nanda asserts that he is entitled to a sentence reduction because his asthma puts him at high risk for experiencing severe illness or death from COVID-19, he has not received sufficient

treatment for his asthma at Reeves I & II CI, and Reeves I & II CI is not adequately managing a COVID-19 outbreak at the facility.

### A. Nanda's Asthma and Reeves I & II CI's Alleged Failure to Provide Sufficient Medical Treatment

Nanda states that he suffers from "a severe form of asthma complicated by Eosinophilia," a blood disorder. (ECF No. 447 at 1). He also asserts that he has a "hernia, chronic gastritis, gall bladder polyps, prostate problems, high cholesterol, and severe allergies." (*Id.* at 10). Nanda attaches medical records to his Motion for support. (*Id.* at Exhibit B). Nanda submits an affidavit from his doctor, Vikrant Salaria, in which Dr. Salaria opines that because of Nanda's asthma and Eosinophilia, Nanda "is at risk of significant deleterious and potentially fatal complications to his health should he contract the virus at [Reeves I & II CI]" and states that Nanda should be moved into home confinement. (*Id.* at Exhibit C).

Nanda asserts that he has not received adequate treatment for his asthma at Reeves I & II CI. (ECF No. 448 ¶ 8). In his second compassionate release request to Reeves I & II CI's facility administrator, Nanda states that he has had two episodes of respiratory attacks in the last four months and that emergency medical services had to be called because he could not breathe. (ECF 447 at Exhibit A). Nanda asserts that at the time, his blood pressure "was in the range of 160 which is very dangerous." (*Id.*). His second request also states that he has filed several complaints about his breathing to Reeves I & II CI nurses, but that he has received no treatment. (*Id.*).

### B. Alleged Outbreak of COVID-19 at Reeves I & II CI

Nanda asserts that Reeves I & II CI is not adequately managing an outbreak of COVID-19 at the facility. For support, Nanda cites the following:

- A 2013 article titled *America's Ten Worst Prisons: Reeves County* in MOTHER JONES that reported that Reeves I & II CI has a "reputation for horrifically inadequate medical care." (ECF No. 447 at 4).

- A 2010 lawsuit against Reeves I & II CI brought by the ACLU of Texas, which alleged that Reeves I & II CI held down costs by withholding appropriate medical care to inmates. (*Id.*).

- A June 2020 article titled *How the Coronavirus Became a Death Sentence at a GEO Group Halfway House* in THE INTERCEPT, in which inmates reported that the GEO Group facilities had "done nothing" to mitigate COVID-19. (*Id.* at 5).

- A class action securities fraud lawsuit brought against Reeves I & II CI's corporate management by shareholders to recover their losses due to the Geo Group's inadequate response to COVID-19. (*Id.*).

- An August 2020 article titled *Complaints at GEO Group Facilities Not Only Affecting West Texans* in ABC News 27, discussing the class action complaint. (*Id.* at 6).

- Nanda's declaration, in which he states that:

    o In July 2020, a corrections officer at Reeves I & II CI told him that staff and inmates had been infected with COVID-19. (ECF No. 448 ¶ 2).

    o Before August 2020, no guards or inmates were wearing masks at Reeves I & II CI. (*Id.* ¶ 3).

    o Currently, there is no social distancing in Reeves I & II CI, and inmates do not wear masks in the housing facility. (*Id.*).

    o Five weeks prior to filing his Motion, inmates infected with COVID-19 were moved from Unit A to other units in Reeves I & II CI, and inmates started getting sick after the Unit A inmates were dispersed. (*Id.* ¶ 4).

    o He heard a Reeves I & II CI nurse tell inmates with COVID-19 to drink water because they would receive no other treatment. (*Id*. ¶ 5). He learned that some of these sick inmates have been sent to the hospital. (*Id.*).

- - o   Four weeks prior to filing his Motion, two Reeves I & II CI nurses told him that they intended to file a class action lawsuit against Reeves I & II CI for moving the Unit A sick inmates to other parts of the prison. (*Id.* ¶ 6).

    - o   On September 1, a nurse told him that most of the prison nurses are leaving because of the way Reeves I & II CI is handling COVID-19. (*Id.* ¶ 7).

    - o   A week prior to filing his Motion, he told a BOP official that he has not received proper care for a torn ligament in his ankle and for his asthma. (*Id.* ¶ 8). The official told him that the BOP had not been able to hire and retain proper medical staff for Reeves I & II CI. (*Id.*).

- Declaration of inmate at Reeves I & II CI, Vadim Dmitruk, in which Dmitruk states:

    - o   He witnessed sick inmates being moved from Unit A to Unit B, and that many Unit B inmates fell sick shortly afterward and had COVID-19 symptoms. (ECF No. 452 ¶ 2). Around this time, corrections officers were not wearing masks. (*Id.* ¶ 6).

    - o   He has experienced COVID-19 symptoms, including fever, coughing, difficulty breathing, and loss of his sense of smell and taste. Despite his requests, he has not received medical treatment. He does not believe COVID-19 tests are being performed at Reeves I & II CI. (*Id.* ¶ 3).

    - o   He witnessed an inmate with COVID-19 symptoms inform the Reeves I & II CI medical office of his condition and was prescribed Ibuprofen and then send back to Unit B after his fever abated. (*Id.* ¶ 4).

    - o   He witnessed eight inmates ask a corrections officer about the sick Reeves I & II CI inmates. The officer acknowledged that there is no COVID-19 plan at Reeves I & II CI and said "we cannot help you." (*Id.* ¶ 5).

    - o   Currently, inmates do not wear masks in Unit B and there is no social distancing. (*Id.* ¶ 6).

- Declaration of inmate at Reeves I & II CI, Juan Gonzalez, in which Gonzalez states:

    - o   Despite his requests, he has not received treatment for his glaucoma and has lost 30% of his eyesight. (ECF No. 453 ¶ 1).

- - o   Two months prior to the filing of Nanda's Motion, Gonzalez had COVID-19 symptoms, including fever, trouble breathing, and lost appetite, and despite requesting medical treatment, only received Ibuprofen.  (*Id.* ¶ 4).

  - o   Gonzalez has witnessed other inmates requesting medical care for COVID-19 symptoms and not receiving any.  (*Id.* ¶ 5).

- Declaration of inmate at Reeves I & II CI, Mark Thompson, in which Thompson states:

  - o   One month prior to the filing of Nanda's Motion, Thompson had COVID-19 symptoms, including extreme fatigue, chills, sweats, and lack of appetite.  (ECF No. 454 ¶ 2).

  - o   He witnessed Reeves I & II CI moving approximately 70 visibly sick inmates from Unit A to Unit B and other units.  (*Id.* ¶ 3).

  - o   Despite his symptoms, he was never tested for COVID-19 at Reeves I & II CI.  (*Id.* ¶ 5).

  - o   He has heard about half a dozen corrections officers and other Reeves I & II CI staff confirm there is COVID-19 at Reeves I & II CI.  (*Id.*).

  - o   He has seen inmates complain about not receiving medical care for their COVID-19 symptoms.  (*Id.*).

## II.   Legal Standard

A district court does not have inherent authority to modify a defendant's sentence after it has been imposed.  *See* 18 U.S.C. § 3582(c).  However, under § 3582(c)(1)(A), as amended by the First Step Act of 2018, "[a] court, on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'"  *United States v. Chambliss*, 948 F.3d 691, 692–93 (5th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)); *see id.* at 693 n.1.

**III.     Analysis**

Nanda has not established "extraordinary and compelling reasons" to modify his sentence under 18 U.S.C. § 3582(c)(1)(A). A court's decision to modify a defendant's sentence must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Muniz*, No. 4:09-cr-00199-1, 2020 WL 1540325, at *1 (S.D. Tex. Mar. 30, 2020) ("[A] court may modify a defendant's sentence after considering the factors set forth in § 3553(a) to the extent applicable if it finds that extraordinary and compelling reasons warrant such a reduction and such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." (internal quotation marks and citations omitted)). The policy statement applicable to compassionate release—U.S.S.G. § 1B1.13—has not been amended since the First Step Act expanded who may move for compassionate release under § 3582(c)(1)(A).[1] In *United States v. Lee*, the Court recently concluded that it should consider § 1B1.13 and apply its discretion when considering a § 3582(c)(1)(A) motion in light of the COVID-19 pandemic. No. 3:07-cr-00289-M, ECF No. 1950 at 7 (citing *United States v. Gonzales*, No. SA-05-cr-00561-XR, 2019 WL 5102742, at *2 (W.D. Tex. Oct. 10, 2019)). The Court further stated:

> Section 1B1.13 "sets forth three circumstances that are considered 'extraordinary and compelling reasons.'" *Muniz*, 2020 WL 1540325, at *1 (citing U.S.S.G. § 1B1.13(1)(A) & cmt. n.1). "Among these are the 'medical condition of the defendant,' including where the defendant is 'suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.'" *Id.* (quoting U.S.S.G. § 1B1.13 cmt. n.1). "The policy statement also requires that the defendant not pose a danger to the safety of the community." *Id.* (citing U.S.S.G. § 1B1.13(2)).

---

[1] It is unlikely that the Sentencing Commission's policies will be updated any time soon as there are currently an insufficient number of voting commissioners. *See, e.g.*, *United States v. Cantu*, 423 F. Supp. 3d 345, 347–48 n.1 (S.D. Tex. 2019); *United States v. Maumau*, No. 2:08-cr-00758-TC-11, 2020 WL 806121, at *1 n.3 (D. Utah Feb. 18, 2020).

*Lee*, No. 3:07-cr-00289-M, ECF No. 1950 at 7–8.

The CDC provides that adults with moderate to severe asthma "might be at an increased risk for severe illness from the virus that causes COVID-19."[2] Nanda claims that he has asthma and provides medical records from 2010 to 2013 and Dr. Salaria's letter for support. The Government submits some of Nanda's additional medical records and argues that Nanda has not shown that he has moderate to severe asthma because one of the records states that Nanda's asthma is "intermittent" and "exercise-related." (ECF No. 456 at 4). After reviewing Nanda's medical records and Dr. Salaria's letter, the Court finds that Nanda has shown that his asthma might put him at risk for severe illness should he contract the virus.

Still, "the Court must consider every prisoner individually and should be cautious about making blanket pronouncements that categories of prisoners—for example, all those who have [chronic medical conditions identified by the CDC]—warrant compassionate release, even given the unique circumstances of the COVID-19 pandemic." *United States v. Franklin*, No. 3:00-cr-468-L, 2020 WL 3872802, at *2 (N.D. Tex. July 8, 2020) (alteration in original) (quoting *United States v. Delgado*, No. 3:17-cr-242-B, 2020 WL 2542624, at *3 (N.D. Tex. May 19, 2020)). "The court does not downplay [Nanda's] chronic medical conditions . . . or discount that being confined in a prison makes it more difficult for him or any prisoner to follow official precautions for social distancing and handwashing while in custody." *Franklin*, 2020 WL 3872802, at *2.

However, Nanda has not shown that the CI Reeves I & II is incapable of managing Nanda's health condition, or that Nanda's health conditions "substantially diminish[ ] the ability of the defendant to provide self-care." U.S.S.G. § 1B1.13 cmt. n.1; *see also Franklin*, 2020 WL

---

[2] See Centers for Disease Control, People with Certain Medical Conditions, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated October 6, 2020).

3872802, at *2 (denying motion for compassionate release because defendant "fail[ed] to establish that his conditions (1) are sufficiently severe, (2) have an end of life trajectory, and (3) diminish his ability to provide self-care"). Nanda's claims that he has requested care for his asthma and has not received that care are only supported by his own declaration and his previous requests for compassionate release, which are not sufficient. Further, according to the BOP's website, CI Reeves I & II currently has zero inmates that have tested positive for COVID-19.[3] The website also shows that 12 inmates have recovered and that Reeves I & II CI has had zero inmate deaths. These statistics weigh heavily against the news articles and inmate declarations that Nanda provides to support his claim that there is a significant outbreak of COVID-19 at CI Reeves I & II.

Nanda argues that this Court's decision in *Lee*, where the Court granted Lee's motion for compassionate release, is dispositive. The Court disagrees. While Lee was also diagnosed with asthma, at the time the Court issued its Order, the BOP's website stated that FCI Oakdale, where Lee was incarcerated, had 43 confirmed positive cases of COVID-19 among its inmates and staff, and that, of the 24 federal inmates nationwide who have died from the virus, seven were incarcerated at FCI Oakdale. (*Lee*, No. 3:07-cr-00289-M, ECF No. 1950 at 2). Nanda has not made a similar showing here.

Ultimately, after considering the evidence provided by Nanda and the Government, the Court finds that that Nanda has not shown extraordinary and compelling circumstances that merit compassionate release.

While the Court does not believe Nanda to be "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," *see* U.S.S.G. § 1B1.13(2), the Court

---

[3] https://www.bop.gov/coronavirus/ (last visited on October 19, 2020).

finds that Nanda's requested relief is inappropriate after consideration of the factors listed in 18 U.S.C. § 3553(a). Although the Court stated at sentencing that it believed Nanda "is not going to engage in further crimes," the likelihood of recidivism is just one of the factors that the Court addresses under § 3553(a). The Court considers the nature and circumstances of Nanda's crime to be serious. At sentencing, the Court found that the § 3553(a) factors weighed in favor of Nanda's sentence, and Nanda does not offer any compelling reason why these sentencing factors should be weighed any differently now. The Court therefore "weighs those factors now the same as it did at sentencing." *Delgado*, 2020 WL 2542624, at *3.

In sum, Nanda is not now entitled to compassionate release under § 3582(c)(1)(A).

## IV. Conclusion

For the foregoing reasons, Nanda's Motion to Reduce Sentence (ECF No. 447) is DENIED.

**SO ORDERED**.

October 21, 2020.

*[signature]*
BARBARA M. G. LYNN
CHIEF JUDGE